UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF ILLINOIS

ANTONIO HARVEY,

    Plaintiff,

    vs.                                                                No. 06-2244

MICHAEL DOWNEY, CARL BROWN,
and JEAN FLAGEOLE,

    Defendants.

### Memorandum Opinion and Order

Before the court are the defendants' summary judgment motion [29] and the plaintiff's response [33].

### Background

Plaintiff Antonio Harvey alleges in this lawsuit that he was denied adequate medical care at the Kankakee County Jail, Jerome Combs Detention Center ("Jerome Combs"), in violation of his constitutional rights. Specifically, Harvey alleges that he was denied treatment for a hernia. Harvey brings a claim for money damages pursuant to 42 USC § 1983 against Defendants Michael Downey, the Chief of Corrections for Kankakee County, Carl Brown, the Assistant Chief of Corrections for Kankakee County, and Jean Flageole, the head of nursing at Jerome Combs.

Defendants assert that they are entitled to summary judgment because there is no evidence that Harvey's particular medical need was sufficiently serious or that Defendants were deliberately indifferent to that need. Defendants state that Harvey's requests for medical care were taken seriously and he was offered the opportunity to receive treatment by the jail doctor, but either refused to be examined or refused to come to the appointment on each occasion. The Defendants assert that they were not deliberately indifferent and are thus entitled to summary judgment.

### Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v.*

1

*Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).  The party moving for summary judgment must show the lack of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.  *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000).  A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial."  *See* Fed. R. Civ. P. 56(e).  In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts."  *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]."  Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence."  Fed. R. Civ. P. 56(e) (emphasis added).  Personal knowledge may include inferences and opinions drawn from those facts.  *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991).  "But the inferences and opinions must be grounded in observation or other first-hand personal experience.  They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience."  *Visser*, 924 F.2d at 659.

## Undisputed Material Facts

1. On April 24, 2006, plaintiff Antonio Harvey was booked into the Kankakee County Jail, Jerome Combs Detention Center ("Jerome Combs"), as a pretrial detainee.  He remains a detainee at Jerome Combs today (Harvey Dep pp. 5-6, attached hereto as Exhibit A).

2. Defendant Michael Downey is the Chief of Corrections for Kankakee County.

3. Defendant Carl Brown is the Assistant Chief of Corrections for Kankakee County.

4. Defendant Jean Flageole is the head of nursing at Jerome Combs (Flageole Aff. para. 1, attached hereto as Exhibit B).

5. Harvey was diagnosed with a hernia sometime in 2003, when he was an inmate at the Galesburg Prison.  Harvey was examined by a doctor at Galesburg, who wold him he had a hernia but did not mandate any treatment for the hernia (Ex. A, Harvey Dep, pp. 9-10).

6. Harvey was transferred from Galesburg to the Robinson Correctional Center, where he stayed until sometime in 2004.  Harvey did not submit any medical requests regarding his hernia while at Robinson Correctional Center (<u>Id</u>. At 11-12).

7. Harvey was transferred from Robinson to Big Muddy River Correctional Center in 2004, where he stayed for a few months. Harvey's hernia examined by a doctor at Big Muddy River Correctional Center but the doctor did not mandate any treatment (Id. At 13-14).

8. Following his involvement in a fight at Big Muddy, Harvey was transferred to Pontiac Correctional Center. He did not receive any medical treatment for his hernia at Pontiac Correctional Center (Id. At 13-14).

9. In 2005, Harvey was transferred from Pontiac to Western Illinois Correctional Center in Mount Sterling. Harvey was examined by a doctor at Mount Sterling, who pushed the hernia back into Harvey's body. The doctor did not mandate any further treatment for the hernia (Id. At 14-15).

10. After a little less than a year at Mount Sterling, Harvey was paroled to a residence in Kankakee on January 10, 2006, and remained there until April 24, 2006 (Id. At 8, 16). During the three-and-a-half months Harvey was on parole, he did not see a doctor, go to the emergency room or otherwise seek treatment for his hernia (Id. At 16-17).

11. On April 24, 2006, Harvey was arrested for delivery of a controlled substance and booked into Jerome Combs. During his inmate medical screening, Harvey told a correctional officer that he had a hernia but did not take any medications for it (Id. At 6, 18).

12. On May 5, 2006, defendant Flageole interviewed Harvey to find out about his medical history and he indicated that he had a hernia (Ex. B, Flageole Aff., para. 2).

13. On May 7, 2006, Harvey filed a grievance complaining that $25.00 was an outrageous price to see a doctor. Harvey further indicated in the grievance that his hernia could not be pushed in anymore (Ex. A, Harvey Dep, pp. 21-23; Ex. B, Flageole Aff, para. 3).

14. Defendant Flageole's nursing license does not allow her to examine inmates for the purpose of diagnosing hernias, so she responded to Harvey's grievance and told him that if there was a problem with the hernia, he would need to see the doctor. Harvey did not submit a request form, or otherwise request, to see the doctor at that time (Ex. B, Flageole Aff, para. 3; Ex. A, Harvey Dep, 23).

15. On July 12, 2006, Harvey filed a medical request seeking to speak with Nurse Flageole about his hernia. Once again, Nurse Flageole instructed Harvey that he would have to see the doctor for his hernia and to fill out a proper sick call slip to that effect. Harvey submitted the proper sick call slip on July 13, 2006, and an appointment was scheduled with the doctor for July 18, 2006 (Ex. B, Flageole Aff, para. 4; Ex. A, Harvey Dep, pp. 24-25).

16. On July 18, 2006, a nurse took Harvey's vital signs, which were normal, before he was seen by Physician's Assistant Kristy Patterson (Patterson Aff, para. 1-2, attached hereto as Exhibit C).

17. P.A. Patterson discussed with Harvey the different types of hernias and told him that a reducible hernia, one which can be pushed back inside the body, was not an emergency situation and would not require surgery, whereas a strangulated hernia, one which cannot be pushed back into the body, would constitute an emergency situation and would require surgery (Id., para. 2).

18. Before she was able to examine him, Harvey told P.A. Patterson that he did not want to be examined during that appointment unless he was going to be getting surgery for the hernia. Because he refused to be examined, P.A. Patterson told Harvey to push in the hernia and informed him of the signs and symptoms to watch out for that might indicate an emergency situation (Id., para. 3; Ex. A, Harvey Dep., p. 27).

19. On November 26, 2006, Harvey submitted a sick call slip requesting to see the doctor because his job at the detention center was bothering his hernia. (Ex. A, Harvey Dep., p. 33; Ex. B, Flageole Aff., para. 5).

20. An appointment was scheduled for Harvey to see the doctor about his hernia on November 30, 2006. On that date, Harvey refused to go to the doctor's appointment (Ex. B, Flageole Aff., para. 6; Ex. A, Harvey Dep., p. 35).

21. Harvey refused treatment by the jail doctor because he had already filed the instant lawsuit and wanted to be able to support his argument therein (Ex. A, Harvey Dep., pp. 35-39).

22. Harvey did not speak with Defendant Downey about his hernia or medical care complaints (Id., at 43).

23. Harvey did not speak with Defendant Brown about his hernia or medical care complaints (Id.).

24. Since the November 26, 2006, request, Harvey has not submitted any medical requests or sick call slips seeking treatment for his hernia (Id., at 40).

### Discussion and Conclusion

Summary judgment is appropriate in this case because the record shows that Defendants did not violate Harvey's constitutional rights. The Eighth Amendment's protection against cruel

and unusual punishment shields an inmate from a prison official's deliberate indifference to a substantial risk of serious injury or medical need. *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). This means that prison officials cannot intentionally deny or delay access to medical care. *Zentmyer v. Kendall Co.*, 220 F.3d 805, 810 (7th Cir. 2000). Although the Eighth Amendment does not apply directly to pretrial detainees like Harvey, they are nonetheless afforded the same standard of protection under the Due Process Clause of the Fourteenth Amendment. *Id*.

To prevail on a constitutional claim for failure to provide medical care, a pretrial detainee must satisfy both an objective and subjective component. First, to satisfy the objective element, he must show that the deprivation alleged was to a "sufficiently serious" medical need. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994). A serious medical need is one that is "life threatening or poses a risk of needless pain or lingering disability if not treated at once." *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991).

Second, as to the subjective element, the pretrial detainee must show that the defendant was deliberately indifferent to his medical needs. *Zentmyer*, 220 F.3d at 810. This requires a finding of more than mere negligence or even gross negligence. *Chapman*, 241 F.3d at 845. Deliberate indfifference requires a showing that the officials either wanted harm to come to plaintiff or must have been completely unconcerned about plaintiff's welfare in the face of substantial medical harm. *See McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991). "They must know of the serious risk to the prisoner's health . . . and they must also consciously disregard that risk/need so as to inflict cruel and unusual punishment upon the prisoner." *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006) *citing Farmer*, 511 U.S. at 8347-38. This standard creates a "high hurdle" for litigants suing correctional officials. *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002).

Initially, summary judgment is appropriate in this case because Harvey has failed to introduce any evidence that his medical need was sufficiently serious. *See Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997)(rejecting the notion that every ache, pain, or discomfort creates an Eighth Amendment claim). While Harvey's medical complaint - a hernia - may amount to a serious medical need under certain circumstances, the evidence here shows that Harvey's particular hernia was not so serious that it was life threatening or posed a risk of needless pain or lingering disability. *See Davis*, 936 F.2d at 972.

Harvey's hernia was examined on a number of occasions before he came to Jerome Combs by medical professionals at different Illinois prisons. None of those doctors felt that Harvey's hernia was worthy of any sort of treatment plan, let alone surgical treatment. Nor can Harvey's hernia qualify as a need "so obvious that even a lay person would easily recognize that it requires a doctor's attention." *See Chapman*, 241 F.3d at 845. Harvey himself, while on parole between January of 2006 and April of 2006, just before entering Jerome Combs, did not seek any medical treatment for the hernia. Further, Harvey has not complained of or requested medical treatment since November 2006.

Harvey's admission that he did not seek medical help while on parole and has not sought medical treatment since filing the paperwork for this lawsuit sometime in November 2006, undermines his claim of a seriousness medical condition. If Harvey himself does not believe his condition serious enough to warrant medical treatment, how can he hold the prison officials liable for allegedly failing to find his condition serious enough to warrant medical treatment? *See Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996). Since Harvey's medical complaint does not amount to a serious medical need under constitutional guidelines, Harvey fails the first, objective prong of the constitutional analysis. Accordingly, Defendants' motion for summary judgment must be granted.

Furthermore, even if this court were to conclude that Harvey did in fact establish an objectively serious medical need, summary judgment must be granted because the undisputed facts do not support an inference that defendants were deliberately indifferent. Harvey's claim is asserted against defendants in their individual capacities only. Therefore, in order to prevail, Harvey must establish that Defendants Downey, Brown and Flageole directly cause the alleged deprivation at issue. *Palmer v. Marion Co*., 327 F.3d 588, 594 (7th Cir. 2003). Harvey fails to meet this high hurdle.

First, the record is absent of evidence tending to show deliberate indifference by any individual at Jerome combs. The record indicates that Harvey submitted two requests seeking medical treatment for his hernia and that an appointment for him to see a doctor was scheduled on each of those occasions. The record also indicates that Harvey refused to be examined during the first appointment and refused to even go to the second appointment (Defs' Stmt Facts, paras. 18,20). Finally, the record indicates that Harvey did not, after these two doctors appointments and after filing his federal complaint, make any further requests for medical attention (*Id*., para 24). Thus, the record shows that Harvey's complaints about his hernia were taken seriously and that he was offered the opportunity to be examined and treated by a doctor for those complaints. Having been given such an opportunity and having declined it, Harvey cannot now establish that defendants were deliberately indifferent to his medical complaints, that they "wanted harm" to come to him or that they were "completely unconcerned" about his welfare. *See Mcgill*, 944 F.2d at 347. If anything, it was Harvey himself who was completely unconcerned about his welfare in an admitted effort to bolster his arguments in his federal lawsuit.

Second, specifically as to Defendants Downey and Brown, supervisors cannot be held vicariously liable for the actions of others. *Garvin v. Armstrong*, 236 F.3d 896, 899 (7th Cir. 2001). Therefore, Defendants Downey and Brown can be held liable only if they knew Harvey's condition was serious and condoned or turned a blind eye to the alleged inadequate treatment. *See Jones v. Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). Here, the record shows that Defendants Downey and Brown were not directly or personally involved in Harvey's medical care. All of Harvey's communication seeking treatment for his hernia was directed to Defendant Flageole; Harvey did not speak with either Defendant Downey or Brown about his hernia and need for treatment. Further, as discussed above, the record shows that Harvey's condition was not serious, that there was no "inadequate treatment" for Defendants to have condoned and that

6

Harvey's complaints for medical care were not ignored by Defendants.  It is undisputed that Harvey was offered medical care each time he requested it and then he refused it.

Harvey has failed to produce any evidence contained in the record to support a finding that his need for medical care was sufficiently serious, that Defendants Downey, Brown and Flageole consciously disregarded his need or that Defendants caused or participated in a medical deprivation.  Accordingly, Defendants' motion for summary judgment must be granted.

**It is therefore ordered:**

1. **Based on the foregoing and pursuant to Fed. R. Civ. Pro. Rule 56(c), Defendants' summary judgment motion [29] is granted.  The clerk of the court is directed to enter judgment in favor of the Defendants and against the plaintiff.  This case is terminated, with the parties to bear their own costs.**
2. **If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4).  A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal.  *See* Fed. R. App. P. 24(a)(1)(C).  If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.  Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another strike under 28 U.S.C. 1915(g).**

**Enter this 25th day of September 2008.**

/s/ Harold A. Baker
_____
**Harold A. Baker
United States District Judge**